My name is Mark Stern and I am the attorney for Thomas Hazelrigg. May it please the Court. When Congress amended the Bankruptcy Code in 1978, it made a significant and substantial change in the law. Prior to 1978, the law had been that a debtor could take the Fifth Amendment in a bankruptcy proceeding, but that pretty much precluded his discharge. And in the 1978 Act, 727A6 was added. A6 says that a debtor who is not granted immunity, and I am paraphrasing, may assert the Fifth Amendment privilege and his failure to answer questions is not the basis for the denial of discharge. What we have here, everything else aside, is a question of pure statutory interpretation. 727A5 says that the debtor must explain, before the denial of discharge, the loss of assets. 727A6 says the debtor can assert the Fifth Amendment. The two seem to be in conflict. I have found one case that squarely addressed it. That was in Ray Potter. It's cited in the memorandum. Exactly when and how was the privilege invoked here? In every single pleading filed with the Bankruptcy Court. In the first set of schedules, which Mr. Hazelrigg did pro se. In the second set of schedules, in the amended schedules, putting these schedules together was very difficult. It was, and I must correct my statement in the brief, because I read the response to the subpoena yesterday. It was invoked at the beginning of that, and then we went and attempted to say what we had and what we didn't. The only place it was not specifically invoked is in my response to the motion for summary judgment. But the debtor invoked the Fifth Amendment every place I could think of. I had a prior case in which we tried to be helpful, and we ended up waiving it. So in this case... So you didn't bring it before the Bankruptcy Court in any way in terms of bringing your own motion for summary judgment, or in response to the Bankruptcy Trustees motion for summary judgment? I think I probably raised it at some point. I may have been in the motion to reconsider. Yes, that was the first time, and that's probably too late, isn't it? I don't think so, Your Honor, because... What authority do you have? Cite me a case if you can. I can't. So what's your best argument as to why that's not waived? Because, Your Honor, we asserted it in the recipina, we asserted it in the schedules, we asserted it in his... There was a lot of things that you asserted, though, down below, but you didn't really make an issue in terms of presenting it to the Bankruptcy Court at the motion for summary judgment. And you really... it's not really clear that you're... you didn't bring it before the BAP either. We did raise it in... In what way before the BAP? Because it looks like you moved in the response to the... When you moved for reconsideration, I think there was a response to that, but I'm not sure. Oh, no, the BAP considered it waived. The BAP considered it waived because of when you raised it. You're right. Sorry. Go ahead. I... But I'm not sure that it's not waived. I just was hoping you'd give me some reason. Isn't it also true that if it were considered, it could simply be... there could be an adverse inference drawn from it? I don't believe so, Your Honor. And the reason I don't believe so is, in the normal case, yes. But we have here Congress making a decision in enacting 727A6. And in Law v. Siegel, the Supreme Court, in reviewing the Bankruptcy Code, said if there's a specific provision, it trumps a general provision. And here we have a general provision in 727A5 that says the debtor has to explain. And then we have 720F7A6 that says debtor can claim the Fifth Amendment privilege. And, yes, if Congress had not changed the statute in 1978, yeah, that was prior law. The court could make an inference and the debtor was lost his discharge. Counsel, is that... I have two questions which are both about this topic but not specifically related to each other. And my first question is on subsection 6, whether it's your view that a debtor who has invoked the Fifth Amendment can never be denied a discharge, or whether what they're saying is that that alone is not a sufficient reason to deny a discharge. And the reason why that's important is, it seems to me you're arguing that there's an absolute shield that says, King's Acts, once I've mentioned the Fifth Amendment, I have to be able to get my discharge no matter what the circumstances. So what is your position on the meaning of that subsection? I think the meaning is that the debtor has to be asked the question, and then the court has to decide whether the invocation of the Fifth Amendment is appropriate. Does he have a fear or not? Is it a proper invocation? You can't just hold it up as a talisman and say, no, you don't get to ask me anything. But you have to take one step more than saying, well, you didn't answer it on the basis of the Fifth Amendment. We almost got there in this case. The debtor filed his schedules and claimed the Fifth Amendment. The court said, oh, you can do better than that. You can answer some of these things. The debtor corrected schedules and filed and answered some of the questions, and we didn't get to the next step. The next step would have been to do the 2004 exam that the trustee got an order directing him to appear for but never served and didn't do anything until a month before the statute was issued. My second question is related to one that has been asked of you, and that is looking at the BAP's decision concerning the motion for reconsideration, is the BAP accurate in stating that the debtor did not raise the Fifth Amendment privilege issue in responding to the motion for summary judgment in the bankruptcy court, either in writing or orally at the hearing? I don't recall, but I do know that every document that we filed in this case, which were before the court, had the Fifth Amendment. Well, not every document, because it was not that document, which is the relevant document. And it isn't only a question of not having invoked it. In fact, there was a modicum of an explanation given, i.e., there was a list. He didn't say nothing. He said something about what happened to the money. Yes, we did. We said that this is the stuff that's already in the record that the court knows, so you can't say that we're hiding it. I mean, the plasma stock, that was litigated. The corporation on this financial statement was worth millions of dollars. It was an involuntary debtor in the case currently before the bankruptcy court, and I don't remember if it was Judge Doar or one of the other judges. The Mastro, everyone knows about Mr. Mastro. He was a debtor in an involuntary chapter, turned out to be a seven. A lot of that stuff was stuff that everybody knew. The records in this case were seized by the Mastro trustee, put on a CD, and we didn't get them until really late in the proceeding, and it was impossible to figure out what they were. So I don't know if I specifically raised it in the response to summary judgment. I was responding mostly to the failure to keep records, and we won on that point. With 20-20 hindsight, I would have written the brief a lot differently, but I didn't. Judge Doar considered it in his motion to reconsider and didn't want to differentiate between 727A5 and A6, and that's why we're here. I've got four minutes left. If there are any other questions, I'd be happy to answer them, but I might as well reserve it. Thank you. May it please the Court. My name is John Pastuca. I'm an attorney for the United States Department of Justice, representing the appellee, the United States trustee. As has already been discussed today, most of the arguments that Mr. Hazelrig has made to the Court are not preserved for review, and chief among those are the argument that's been the focus this morning, and that's the Fifth Amendment argument. That argument was not raised in the response to the motion for summary judgment. It wasn't raised in Mr. Hazelrig's motion to dismiss. It wasn't raised at the hearing on the motion to dismiss or the motion for summary judgment. As a result, the issue is not preserved for review, and there's no reason for this Court to consider it. But if the Court were to reach out and decide that it was necessary to decide the issue, then the issue would become whether the privilege was invoked. And there were three documents that referenced the missing assets. There was the subpoena, which specifically asked Mr. Hazelrig to provide information about the missing assets. There was the complaint, which identified the assets and said Mr. Hazelrig should be denied a discharge for not explaining what happened to them, and the motion for summary judgment. And in response to the subpoena, the only place where the Fifth Amendment was invoked was Paragraph 1. Paragraph 1 was about tax returns. Paragraph 11 is about the missing assets. Fifth Amendment was not invoked. The complaint, Paragraph 42, listed the missing assets. Paragraph 48 specifically stated that Mr. Hazelrig should be denied a discharge for not explaining what happened to the assets. Fifth Amendment wasn't invoked. Motion for summary judgment. What was it invoked as to? It wasn't invoked as to any of the documents that actually referenced the missing assets. You said it wasn't invoked as to something. What was it invoked as to? Tax returns. Okay. A request for tax returns. And the motion for summary judgment, which referenced the missing asset, it wasn't invoked. The only place it was invoked was the schedules, and they never specifically asked about these specific assets. So the question wasn't posed, what happened to these assets? When that question was posed, Mr. Hazelrig didn't invoke the Fifth Amendment. So he hasn't validly invoked the defense. And even if he had, it wouldn't be a defense. This isn't an A6 claim. A6 provides that a privilege may be invoked. A5 doesn't. So for all those reasons, the Fifth Amendment argument is without merit. I don't understand that point. If it had been invoked, it wouldn't have mattered because? Because the general rule is that an adverse inference can be drawn, and there is nothing indicating that the privilege can be evoked as a complete shield here to an A5 claim. Essentially what Mr. Hazelrig wants to do is – Well, I mean, if you thought that A6 applied, it would – I understand that in general you can draw adverse inferences in civil cases, but why isn't this – if you can't – since – how would you read A6 to allow the reading of the adverse inference, even though it seems to protect improperly invoked privilege against self-incrimination? Well, I think it says that you can't be denied a discharge solely for refusing to testify. But if there's other evidence as well – Where does it say that? Well, what it says is the debtor has refused in this case on a ground other than improperly invoked privilege to respond to a material question approved by the court or to testify. So it says that you can't be denied a discharge if you refuse to testify. But that's all it says. It doesn't say – and then if there's other evidence – Other than the properly invoked privilege against self-incrimination. Right. So on that basis alone, you can't be denied a discharge. But if there is other evidence establishing the other grounds for denial of discharge, and here it's A5 – That's true, but you were saying that you could draw an adverse inference, and I don't know that you could. Under A5. Maybe not under A6, but this isn't an A6 claim. This is an A5 claim where the allegation is that Mr. Hazelbrake did not satisfactorily explain what happened to his assets. That's why he was denied a discharge, not for refusing to testify. This is something broader than refusing to respond to a material question approved by the court or to testify. Yes, he was never asked to testify. It's non-submission of documents, is that why? Right, right. He could have provided all kinds of evidence that would have provided a satisfactory explanation without having to testify. So for all those reasons, our position is that the Fifth Amendment argument is without merit. It's the focus of Mr. Hazelbrake's brief, so I'd be happy to address any other questions that the court has about other arguments that Mr. Hazelbrake has made. Otherwise, I would just rely on my briefs. Thank you. Thank you. Yes, sir. Yeah, I'm trying to read my writing. I've not researched the issue. I was trying to look it up, but I recalled from law school, which was a long, long, long time ago, that constitutional issues can be raised. I'm sorry, that's subject matter jurisdiction. Never mind. But my point is we certainly did raise the Fifth Amendment objection. I don't think it was too late. Well, you didn't raise it. When there was a request made for these documents specifically, you didn't raise it. We didn't raise it because we answered honestly the subpoena and said we don't have them. Well, that's a different point, but you didn't raise it. We didn't raise it because, you know, if we'd had them, we would have turned them over. But we didn't have them. Now you're saying you wouldn't have turned them over because you would have invoked the privilege. I mean, those are two contradictory things. They are contradictory, Your Honor. I think you've got an obligation. They are not contradictory? I don't. I think, Your Honor, to the extent that it gets back to the question that Judge Graber asked. When you say I don't have them, that is answering the question, isn't it? It is answering the question. It says we don't have them. You're insisting with the Fifth Amendment. No, it gets back to the question that Judge Graber asked. Can you just assert the—I hope I'm pronouncing that right. No, you're not. It's Judge Graber. Graber, I apologize. It gets back to the question that Judge Graber asked, and that is can you just assert the Fifth Amendment and say nothing? No, you have to make a—you can't just say blanketly we're not going to respond on the basis of the Fifth Amendment. Exactly, and because you never invoked it at this stage, you've never made any showing about why you properly invoked it. And the language on which you're relying requires a properly invoked privilege. Yes, we didn't invoke it. We said—we answered the question honestly. We don't have those documents. If we'd had them, then we would have had to say yes, we have them. We're invoking the Fifth Amendment against turning them over, or we would have had to turn them over. Is there any argument you want to make besides the First Amendment, which was not your entire brief? Failure to explain where the assets went. There were any number of—our point is that you have to actually be asked about what the assets are. You can't just send a subpoena and not ask. The schedules only have limitations about what the periods of time they're asking about. You accounted for summary judgment on the ground that you hadn't accounted for where the assets went. We hadn't accounted, Your Honor. We took the Fifth Amendment, and every time anyone asked, we hadn't accounted. We accounted for the ones that we knew. Mr. Hazelrig's— If you accounted for the ones that you knew, then you didn't take the Third Amendment. You're saying completely contradictory things. Your Honor, the problem was that Mr. Hazelrig, no one ever asked him, sat him down and said, what about this and what about that? In responding to a summary judgment, it's very difficult to come forward and say, especially with the amount of assets that Mr. Hazelrig had at one time and the manner in which his life imploded, what happened to things? Because he really couldn't answer. His bookkeeper died. His records got destroyed. The other records, which had been in boxes, were picked up by the Mastro trustee. I received 48,000 individual CD PDF files, and it was impossible to go figure out which was which. They were not delineated by the name of the box they were in, the name of the file. They were just delineated 1, 2, 3, 4, except they were usually much larger numbers. There was no way he conceivably could have done that. Thank you, Your Honor. Thank you. Your time is up. The case of Hazelrig v. United States trustee is submitted, and we'll go on to United States v. Romero.
judges: Graber, Berzon, Murguia